854 F.2d 1316
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Roy E. DOSS, Petitioner,
v.
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Respondent.
 No. 87-3874.
 United States Court of Appeals, Fourth Circuit.
 Argued May 3, 1988.
Decided Aug. 5, 1988.
 
 J. Benjamin Dick (Law Offices of J. Benjamin Dick on brief) for petitioner.
 Stephen K. Ackerman (George R. Salem, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Barbara J. Johnson, Counsel for Appellate Litigation, Thomas L. Holzman, Assistant Counsel for Appellate Litigation, U.S. Department of Labor on brief) for respondent.
 Before JAMES DICKSON PHILLIPS and ERVIN, Circuit Judges, NORMAN P. RAMSEY, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Roy E. Doss petitions for review of a final order of the Department of Labor Benefits Review Board (Board) affirming the decision and order of an Administrative Law Judge (ALJ) denying Doss benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. We find that the ALJ's decision is supported by substantial evidence and therefore affirm.
 
 
 2
 Petitioner Doss filed his black lung benefits claim on May 17, 1974. After benefits were initially denied, a formal hearing was held before an ALJ on November 30, 1984. The ALJ found that while Doss had failed to establish the existence of pneumoconiosis by x-ray pursuant to 20 C.F.R. Sec. 410.414(a)(1), Doss had established the existence of a totally disabling respiratory impairment under Sec. 410.414(c). Benefits were denied, however, on the basis of the ALJ's determination that Doss had not met his burden of showing that his pulmonary condition "arose out of employment in a coal mine."[1]
 
 
 3
 The Board affirmed the ALJ's finding that the x-ray evidence failed to establish the existence of pneumoconiosis. The Board declined to review the issue of whether Doss had sufficiently established the etiology of his pulmonary condition due to Doss' failure to allege specific error in the ALJ's decision in this regard.
 
 
 4
 In his petition for review before this court, Doss argues that the ALJ improperly weighed the x-ray evidence presented at the hearing and that substantial evidence does not support the ALJ's determination that Doss failed to establish that his pulmonary condition arose from his coal mine employment. Accordingly, we consider only these specific issues.
 
 
 5
 * In evidence at the hearing before the ALJ were nine x-ray films read a total of twelve times. The earliest x-ray was dated March 15, 1974, and was read by Drs. Scott and Rose, both uncertified readers whose radiologic qualifications were unknown to the ALJ.[2] No mention of pneumoconiosis was made although Doss' lungs were noted to be over-expanded. An x-ray dated April 11, 1974, was read by Dr. Cooper, again an uncertified physician with unknown radiologic qualifications, without mention of pneumoconiosis. This x-ray was read by Dr. Shaffer, an A-reader, as negative for pneumoconiosis. X-rays taken June 18, 1974, June 19, 1974, and June 20, 1974, were read by Drs. Rowe, Brenbridge, and Merritt, respectively, as free of infiltrates but without mention of pneumoconiosis. The radiologic qualifications of all three physicians are unknown. Next, Dr. Shaffer read a film dated December 5, 1974, as 1/1 type t, small opacities-irregular, but concluded that the fibrotic changes were not the result of pneumoconiosis. This film was reread by Dr. Browning, a B-reader, who found it to be negative for pneumoconiosis but positive for emphysema. On April 21, 1976, another x-ray was taken and read by Dr. Surrat, radiologic qualifications unknown, as negative for pneumoconiosis but positive for emphysema. Four years later, on April 9, 1980, Dr. Brenbridge read a film taken that day as showing "a few interstitial lines" but "no definite acute pulmonary infiltrates." Finally, a film was taken on September 22, 1983, and initially read by Dr. Guerrant, a pulmonary special who is neither certified as a reader nor possessed of any radiologic qualifications, as negative for pneumoconiosis. This film was reread that same day by Dr. Bassali, a certified B-reader and board-certified radiologist, as positive for pneumoconiosis "type p/s with profusion of 3/2 affecting all six lung zones." Dr. Bassali also noted the presence of "mild to moderate pulmonary emphysema."
 
 
 6
 The ALJ noted that Sec. 410.414(a)(1) allows a miner to establish the existence of pneumoconiosis by x-ray. He then found that Doss had failed to do so because Dr. Bassali's positive reading lacked credibility in light of Dr. Guerrant's negative interpretation of the same x-ray and in light of the several prior negative readings. The Board, in affirming the ALJ, simply stated that this finding was "supported by the numerical weight of the x-ray evidence" which it considered to be conflicting with Dr. Bassali's reading.
 
 
 7
 Although the Supreme Court has recently held that in order to establish pneumoconiosis by x-ray a miner must do so by a preponderance of the x-ray evidence, see Mullins Coal Co. v. Director, O.W.C.P., 108 S.Ct. 427, 438-39 (1987), we have serious reservations as to the propriety of the ALJ's finding that Doss failed to do so in the present case. Significantly, in Mullins Coal, the Supreme Court noted that a single item of qualifying evidence may suffice to meet the claimant's burden when it is not "overcome by more reliable conflicting evidence." Id. at 439. While it is not necessary for us to reach this issue in light of our finding that substantial evidence supports the ALJ's finding that Doss has not shown that his impairment arose from coal mine employment, we observe here that the progressive nature of the black lung disease has led the Board and several courts to consistently conclude that " 'early negative X-ray readings are not inconsistent with significantly later positive readings.' " Id. at 436 (quoting Elkins v. Beth-Elkhorn Corp., 2 BLR 1-683, 1-686 (Ben.Rev.Bd.1979)). Moreover, as the Board in the present case implicitly recognized, the applicable regulations contemplate that consideration be given to physicians' relative radiologic qualifications and level of certification as readers when weighing their conflicting x-ray reports. See 20 C.F.R. Secs. 718.202, 727.206.
 
 II
 
 8
 We have already noted that Doss, in order to establish his entitlement to benefits under the Act, must show that his impairment, whether pneumoconiosis or other pulmonary disease, arose from coal mine employment. While we recognize that an ALJ's analysis of causation might vary slightly depending on the initial finding as to the specific nature of the pulmonary impairment, we find that in the present case substantial evidence, in any event, supports the ALJ's finding that Doss failed to show that his impairment arose from coal mine employment.
 
 
 9
 The uncontroverted evidence before the ALJ was that Doss spent three weeks working underground at McAlpin Coal Company, while the remainder of his seven years tenure with that company, from 1937 to 1943, was spent driving a truck hauling waste from the mine to the dump site and occasionally filling in on work at the tipple. Doss left the mine in 1943 and thereafter worked three years for Bethlehem Steel where he was exposed to smoke, coke fumes, and asbestos. Next, from 1946 to 1959, Doss worked as a taxi-driver in Beckley, West Virginia, where, according to his own testimony, he was further exposed to coal dust when driving miners to and from the mines. Finally, from 1959 to 1974, Doss was employed by a baking company where he was exposed to ammonia and propane fumes as well as to flour dust. He retired in 1974 due to a heart attack.
 
 
 10
 Other evidence of Doss' non-mine related dust exposure includes his own testimony that he lived 200 yards from the tipple and that he was exposed to dust at home. Additionally, medical reports from Drs. Surrat and Himes read in conjunction with Doss' own testimony indicate that Doss smoked a pack of cigarettes per day from the age of twenty-three until three weeks before the hearing in 1984 when he was sixty-eight years old. Although a 1977 medical report from Dr. D.L. Rasmussen indicated that doctor's opinion that Doss' lung impairments were related to his coal mine employment, the ALJ rationally rejected this conclusion as Dr. Rasmussen failed to consider the effects of Doss' significant degree of non-mine related coal dust exposure, his exposure to asbestos, other dusts, and fumes, and Doss' long smoking history. Similar failures were properly found to limit the probity of a Dr. Strasser's report. Conversely, Dr. Paul Surrat, after a complete pulmonary examination of Doss in 1976, which included an accurate employment and smoking history, expressed his opinion that Doss' lung impairments were predominantly due to his smoking history and resulting emphysema.
 
 
 11
 We find that the foregoing discussion demonstrates the very substantial nature of the evidence in support of the ALJ's finding that Doss failed to show that his lung impairment arose from coal mine employment. It is not necessary therefore for us to consider the respondent's argument that Doss has waived a challenge to this finding by not properly asserting it before the Board. The decision of the ALJ being supported by substantial evidence, the decision of the Benefits Review Board is affirmed.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Doss does not allege error in the ALJ's failure to examine his claim under 20 C.F.R. Sec. 410.414(a)(1) as required by this court in Broyles v. Director, O.W.C.P., 824 F.2d 327 (1987), cert. granted, 108 S.Ct. 1288 (1988). Although, in light of Broyles, the failure to consider Doss' entitlement to the Sec. 410.490(b) interim presumption was error, it was harmless in this case as both Sec. 410.490(b) and the regulations as 20 C.F.R. Secs. 410.401-410.476 require that a miner such as Doss, with less than 10 years of coal mine employment, establish by competent evidence that his pulmonary impairment "arose out of employment in the Nation's coal mines." See 20 C.F.R. Secs. 410.410(b), 410.414(c), 410.416(b), 410.456(b), 410.490(b)(2)
 
 
 [2]
 Under the applicable regulations, physicians who have demonstrated their proficiency in evaluating x-rays through examinations are certified as "A" (first) or "B" (final) readers. An x-ray interpretation by a "B" reader is properly accorded more weight than that of an "A" reader and readings by either are considered more probative than those by noncertified readers. Similarly, readings by board-certified radiologists are of greater probative value than readings by physicians other than radiologists. See 20 C.F.R. Sec. 718.202 (1987); Mullins Coal Co. v. Director, OWCP, 108 S.Ct. 427, 432 n. 16 (1987) (citations omitted)