863 F.2d 47
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George ANDERSON, Petitioner,
v.
YOUGHIOGHENY & OHIO COAL COMPANY; Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 87-4003.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1988.
 
 Before WELLFORD and BOGGS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from the Benefits Review Board (the Board) which affirmed the decision of an administrative law judge (ALJ) denying George Anderson black lung disability benefits. Anderson argues that the ALJ erred in failing to invoke the interim presumption of 20 C.F.R. Sec. 727.203(a) because he erroneously considered a ventilatory test which failed to conform to regulatory requirements. We agree with the Board that the nonconforming ventilatory test was properly considered by the ALJ in making his determination not to invoke the interim presumption of pneumoconiosis. We therefore affirm the decision of the Board.
 
 
 2
 George Anderson was engaged in coal mining employment from January 1937 to September 1978 when he ceased employment because of shortness of breath. On October 12, 1978, Anderson filed an application for black lung benefits which were awarded by the Department of Labor. On January 5, 1979, a ventilatory study was conducted on Anderson the results of which fell within the standards outlined in 20 C.F.R. Sec. 727.203(a)(2) for invoking the interim presumption of pneumoconiosis.[1] On June 16, 1979, Youghiogheny & Ohio Coal Company contested the award of benefits to Anderson. On August 30, 1979 and on June 18, 1980, further ventilatory tests were conducted which fell outside the regulatory standards for presuming pneumoconiosis.[2] Sarah Long, a medical consultant for the Department of Labor, stated that the August 30, 1979 test was not acceptable because the paper speed used did not comply with that specified in the regulations.[3] It is the August 30, 1979 test that is in issue in this appeal.[4]
 
 
 3
 Following a hearing, the ALJ denied Anderson benefits on June 18, 1981, noting that the more recent ventilatory tests yielded results which did not qualify under section 727.203(a)(2). After an appeal to the Benefits Review Board, the case was eventually remanded to the ALJ who was instructed to weigh the January 5, 1979 and August 30, 1979 ventilatory studies to determine if the interim presumption of 20 C.F.R. Sec. 727.203 had been invoked. On October 16, 1984, the ALJ determined that the interim presumption had not been invoked and that Anderson was not entitled to benefits. Anderson again appealed to the Board which affirmed the ALJ's decision on September 23, 1987.
 
 ANALYSIS
 
 4
 The standard of review in cases involving black lung disability benefits is well established. This court must affirm the decision below if it is supported by substantial evidence and is in accordance with the applicable law. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 5
 20 C.F.R. Sec. 727.203 governs claims for black lung benefits filed between July 1, 1973 and April 1, 1980. This section provides for a presumption of total disability due to pneumoconiosis for a miner who has engaged in coal mine employment for at least ten years if one of four medical requirements is met. This appeal concerns the second of the four requirements which provides:
 
 
 6
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... if one of the following medical requirements is met:
 
 
 7
 .............................................................
 
 
 8
 ...................
 
 
 9
 * * *
 
 
 10
 (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in Sec. 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than the values specified in the following table:
 
 
 11
 Equal to or less than--
 FEV 1 MVV
67" or less 2.3 92
68" 2.4 96
69" 2.4 96
70" 2.5 100
71" 2.6 104
72" 2.6 104
73" or more 2.7 108
 
 
 12
 20 C.F.R. Sec. 727.203(a)(2). Anderson argues that the results of the August 30, 1979 ventilatory study should not have been considered in deciding whether or not to invoke the interim presumption of Sec. 727.203 because this study did not conform with the standards required for ventilatory studies outlined in 20 C.F.R. Sec. 410.430.[5] Anderson specifically contends that the August 30, 1979 study did not comply with the requirement that "the paper speed to record the FEV-1 should be at least 20 millimeters (mm.) per second."[6] It is uncontroverted that the paper speed of the August 30, 1979 ventilatory study was less than 20 millimeters per second. However, decisions of the Board have shown a willingness to allow consideration of medical studies which do not conform with the regulatory requirements. The Board in Levitz v. Rochester & Pittsburgh Coal Co., 4 BLR 1-497, 1-502 (1982), held that in light of the general directive of Sec. 727.203(b) that all relevant medical evidence should be considered on rebuttal, "pulmonary function studies do not have to conform to quality standards in order to constitute relevant medical evidence.... Consequently, a medical opinion based on a non-qualifying though non-conforming pulmonary function study must also be considered relevant rebuttal evidence." See also May v. Eastern Coal Co., 7 BLR 1-511, 1-513 (1984) ("Although an administrative law judge is not precluded from considering whether pulmonary function tests are nonconforming in determining the evidentiary weight to be given a physician's opinion based on such tests, ... we hold that an administrative law judge is not compelled to consider this factor."); Crapp v. United States Steel Corp., 6 BLR 1-476, 1-479 (1983) (holding that it was proper to consider on invocation of the interim presumption a pulmonary function study which did not conform with the regulatory requirement of a statement of comprehension and/or cooperation). Thus, tests which do not conform with the regulatory requirements, such as the August 30, 1979 ventilatory study in this case, can nonetheless be considered by the ALJ in determining whether a claimant is totally disabled due to pneumoconiosis under 20 C.F.R. Sec. 727.203.
 
 
 13
 Moreover, 20 C.F.R. Sec. 727.203(b), which allows for rebuttal of the interim presumption, provides that "[i]n adjudicating a claim under this subpart, all relevant medical evidence should be considered." The Supreme Court has held that this language of Sec. 727.203(b) means that all relevant medical evidence should be considered at some point in the determination process and that consideration is not limited to the rebuttal phase. Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 108 S.Ct. 427 (1987). The Court stated:
 
 
 14
 [T]hat the "all relevant medical evidence" requirement appears at the beginning of the rebuttal section ... does not indicate that the drafters intended a more limited evidentiary battle at the invocation stage. As long as relevant evidence will be considered at some point by the ALJ, the demand that the decision be made on the complete record is satisfied.
 
 
 15
 ... Thus, nothing in the regulation requires all relevant medical evidence to be considered at the rebuttal phase; such evidence must simply be admissible at some point during the proof process.
 
 
 16
 Id. at 435. The Sixth Circuit in Riley v. National Mines Corp., 852 F.2d 197, 198-99 (6th Cir.1988), elaborated on the Mullins holding:
 
 
 17
 Mullins makes it crystal clear that the ALJ is to consider all relevant medical evidence and that he need not wait until the rebuttal phase of the case to weigh the evidence.
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 In sum, it is now clear that an ALJ may weigh conflicting and competing evidence in deciding whether a claimant has carried his presumption invocation burden and that such consideration of all relevant evidence need not wait until the rebuttal phase of the proceedings.
 
 
 21
 The evidence considered by the ALJ in making his decision not to invoke the interim presumption included the nonconforming August 30, 1979 ventilatory study as well as the testimony of the administering physician that the nonconforming speed of the tests performed in the study did not detract from their medical relevance. Decisions of the Benefits Review Board indicate that this evidence constitutes relevant medical evidence for purposes of Sec. 727.203(b). Mullins and Riley authorize the consideration of such evidence at the invocation stage. We therefore hold that this evidence constituted relevant medical evidence and further constituted substantial evidence to support the decision not to invoke the interim presumption of 20 C.F.R. Sec. 727.203.
 
 
 22
 Accordingly, the decision of the Benefits Review Board is AFFIRMED.
 
 
 
 [1]
 The January 5, 1979 study yielded an FEV-1 of 2.3 and a MVV of 92.4
 
 
 [2]
 The August 30, 1979 study yielded a FEV-1 of 3.0 and a MVV of 81.6. The June 18, 1980 study yielded a FEV-1 of 2.86 and a MVV of 98.1. Anderson's height was indicated as 69 inches on the January 5, 1979 study and 68 inches on the August 30, 1979 study. Both heights provide the same FEV-1 and MVV values in 20 C.F.R. Sec. 727.203(a)(2)
 
 
 [3]
 However, the physician who administered the August 30, 1979 ventilatory study, Dr. George O. Kress, stated in a deposition that, in his opinion, the nonconforming paper speed did not detract from the medical relevance of the test results
 
 
 [4]
 The June 18, 1980 ventilatory study was not acceptable because spirometric tracings were not incorporated in the file as required by 20 C.F.R. Sec. 410.430. This study however is not in issue in this appeal
 
 
 [5]
 20 C.F.R. Sec. 410.430 provides:
 Spirometic tests to measure ventilatory function must be expressed in liters per minute. The reported maximum voluntary ventilation (MVV) or maximum breathing capacity (MBC) and 1-second forced expiratory volume (FEV-1) should represent the largest of at least three attempts. The MVV or the MBC reported should represent the observed value and should not be calculated from FEV-1. The three appropriately labeled spirometric tracings, showing distance per second on the abcissa and the distance per liter on the ordinate, must be incorporated in the file. The paper speed to record the FEV-1 should be at least 20 millimeters (mm.) per second. The height of the individual must be recorded. Studies should not be performed during or soon after an acute respiratory illness. If wheezing is present on auscultation of the chest, studies must be performed following administration of nebulized bronchodilator unless use of the latter is contraindicated. A statement shall be made as to the individual's ability to understand the directions, and cooperation in performing the tests. If the tests cannot be completed the reason for such failure should be explained.
 
 
 [6]
 Anderson argues that this requirement is mandatory and not permissive, i.e., that "should" must be read as "must." We are unconvinced by this argument