**Darewood SHREVE, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 88–3819.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1988.

Decided Dec. 27, 1988.

C. Patrick Carrick (Manchin, Aloi & Carrick), Fairmont, W.Va., for petitioner.

Patricia M. Nece (George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., Michael J. Denney, Counsel for Appellate Litigation, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., on brief, for respondent.

Before WINTER, Chief Judge, and WIDENER and MURNAGHAN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

We must decide whether voluntary overtime work is to be included in a coal miner's "usual coal mine work" in determining eligibility for black lung disability benefits. The Benefits Review Board ("Board") ruled that such overtime should not be included. We agree.

### I.

Darewood Shreve began work as a coal miner in November, 1957. From 1973 until 1985, Shreve performed an average of forty hours of required work per week plus eight hours of *voluntary* overtime each Saturday. With the onset of pneumoconio-

sis in 1985 Shreve reduced the amount of overtime work he performed. He continued to work his normal forty hour week, but worked overtime only every other week, as his health permitted.

Because of the reduction in his overtime work, Shreve sought black lung disability benefits. An Administrative Law Judge ("ALJ") awarded them to him. It was the ALJ's view that Shreve's "usual coal mine work" included his voluntary overtime work, and so totalled forty-eight hours per week. The ALJ determined that, because of Shreve's pneumoconiosis, he was able to work only forty-four hours per week. Accordingly, the ALJ found, the "interim" presumption of disability which arose from Shreve's pulmonary impairment and his long years of work in the industry was not rebutted.

The Board reversed this finding. It ruled that, for purposes of rebutting the interim presumption, a miner's "usual coal mine work" encompassed only required work and did not include voluntary overtime. In so ruling, the Board relied on its earlier decision in *Brown v. Cedar Coal Co.*, 8 Black Lung Rep. (MB) 1–86, 1–88 (1985). Finding that Shreve could perform his "usual coal mine work" of forty hours per week, the Board concluded that the presumption had been rebutted and denied Shreve benefits. Shreve now contends that the Board was mistaken in excluding his voluntary overtime.

## II.

To be entitled to black lung benefits, a miner must demonstrate that he is totally disabled due to pneumoconiosis arising out of coal mine employment. 30 U.S.C. § 901(a); *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987). By regulation "total disability" is defined as a miner's inability to perform "his or her usual coal mine work," coupled with the inability to engage in comparable work with some regularity over a substantial period of time. 20 C.F.R. §§ 718.204(b) and 725.101(a)(21). Total disability will be presumed if a miner has engaged in coal mine employment for at least ten years and offers evidence of the existence of pneumoconiosis. 20 C.F.R. § 727.203(a)(1). This "interim" presumption of entitlement to benefits may be rebutted if it is shown that the miner "is, in fact, doing his usual coal mine work or comparable and gainful work." 20 C.F.R. § 727.203(b)(1).

We agree with the ALJ that Shreve enjoys the interim presumption of entitlement. Whether the ALJ was correct in taking Shreve's voluntary overtime duties into account in defining his "usual coal mine work" and ruling accordingly that Shreve's presumption of entitlement remains unrebutted, is, however, another matter.

We note, initially, that this court has not previously addressed this issue. In analyzing Shreve's claim, however, we find the Board's opinion in *Brown, supra*, to be instructive. The petitioner in *Brown* was able to carry on his regular, sedentary duties as a dispatcher. He contended, nonetheless, that he was totally disabled, because he was prevented by his pneumoconiosis from performing his more strenuous occasional overtime work as a beltman. The Board affirmed the ALJ's finding that the miner's usual coal mine work was, at a minimum, that of a dispatcher, but remanded the case for determination of whether the miner's overtime work was required or voluntary. The Board indicated that the overtime work could be considered part of the miner's usual coal mine work, but only if it was required overtime. *See id.* at 1–88.

We think that the dichotomy suggested by the Board in *Brown* is the correct analysis to be employed in determining whether overtime work may be included in defining a miner's "usual coal mine work." To find, as Shreve urges, that a miner who can perform voluntary overtime work, as well as all of his or her required duties, is "totally disabled" would be absurd. This, we conclude, cannot be the proper interpretation of "total disability" in the regulations implementing the Act. We hold, accordingly, that voluntary overtime work

may not be considered in defining a miner's usual coal mine work.

Shreve was not required to work more than forty hours per week and was capable of working for this period. We think, in light of this, that the Board's decision was correct.

AFFIRMED.