879 F.2d 863
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Oakley RIGGSBY, Petitioner,
v.
HARMAN MINING CORPORATION; Director, Office of Workers'
Compensation Programs, Respondents.
 No. 88-2895.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 6, 1989.
Decided: July 17, 1989.
 
 Joseph E. Wolfe (Wolfe & Farmer, on brief), for petitioner.
 Mark Elliott Solomons (Arter & Hadden, on brief), for respondent.
 Before ERVIN, Chief Judge, and K.K. HALL and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Oakley Riggsby, a retired Virginia coal miner, was denied Department of Labor black lung benefits based on an ALJ's finding, affirmed on administrative review, that Harman Mining Corporation, the responsible operator, had rebutted a presumption of disability. Riggsby argues that substantial evidence does not support the finding of rebuttal, and that the agency erred in failing to evaluate his case under the criteria found in 20 C.F.R. Sec. 410.490(b). Harman in turn contends that the ALJ erred in granting Riggsby a presumption of disability. We affirm based on our conclusion that substantial evidence supports the rebuttal finding.
 
 I.
 A.
 
 2
 Riggsby had spent about forty years as a miner when he retired at the age of 59. Riggsby had at times worked at below-ground mine jobs. At retirement, Riggsby was an electrician, and worked both in and out of the mine shafts. Riggsby's work kept him on his feet about six hours a day.
 
 
 3
 There appears to be no dispute that Riggsby is now totally disabled by some sort of ailment that interferes with breathing. Riggsby first experienced shortness of breath in the 1970s. He had been a pack-a-day smoker for twenty-five years, but quit in 1971 or 1972. He takes medication for hypertension and diabetes, and underwent bypass surgery in 1982.
 
 
 4
 Three of Riggsby's co-workers, who were also black lung claimants, testified that Riggsby's breathing difficulties had interfered with his ability to work. Riggsby's job as an electrician required him to carry a 20-to 25-pound tool bag, and sometimes to lift heavier weights, and to make at least occasional trips to the coal face. Riggsby says he retired when he did because he could no longer breath well enough to continue working.
 
 B.
 
 5
 The formal hearing on Riggsby's claim occurred on December 12, 1985. The ALJ reviewed evidence from six doctors who had examined Riggsby or his records. The submissions of three doctors broadly favored Riggsby, while the reports of the other three did not.[1]
 
 
 6
 The ALJ found the evidence sufficient to invoke a presumption of disability under the then-controlling standard of Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986), rev'd in pertinent part, Mullins Coal Co. v. Director, OWCP, 98 L.Ed.2d 450 (1987).
 
 
 7
 Proceeding to Harman's case in rebuttal, the ALJ found the unfavorable reports more credible, better reasoned and documented, and more consistent with the objective data than the favorable reports. The judge found the preponderance of the x-rays, including all read by the specially proficient "B" readers, negative for pneumoconiosis. The ALJ found only the earliest, 1979, PFS to indicate a value that qualified under 20 C.F.R. Sec. 727.203(a)(2), and observed that yet another doctor, Dr. Garzon, had noted "submaximal effort" on a portion of that test. Of the resting and exercise blood gas tests, the ALJ found only the May 23, 1980, resting test to have yielded a result that qualified under 20 C.F.R. Sec. 727.203(a)(3), although the other resting tests were only slightly above qualifying.
 
 
 8
 Based on all of this, which the ALJ found inconsistent with a diagnosis of the "progressive and irreversible" disease of pneumoconiosis, the ALJ found the interim presumption rebutted under Sec. 727.203(b)(2)-(4).[2] The Review Board held the ALJ to have been within his discretion to weigh the medical evidence as he did.
 
 II.
 
 9
 We believe the rebuttal issue is dispositive in this appeal. With the wealth of medical evidence before him, the ALJ was clearly within his authority to give greater credit to evidence indicating that Riggsby could do his usual or like work, and that Riggsby's ailment was not mining-related. This evidence supplies a substantial basis for the finding of rebuttal, and makes academic the presumption argument advanced by Harman.[3]
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 The substance of the doctors' reports may be classified and summarized as follows:
 
 
 [1]
 Favorable to Riggsby
 A. Dr. Berry first examined Riggsby on December 12, 1979. Based on a December 19, 1979 pulmonary function study (PFS), Berry diagnosed mining-related bronchitis, asthma, and emphysema. Berry also attended Riggsby during his 9/8/80-10/1/80 hospitalization for chest pain. A chest x-ray revealed arteriosclerosis, but no inflammatory process. Berry's 11/5/80 form report stated that Riggsby's respiratory or pulmonary ailments prevented him from performing mining or related work.
 B. Dr. Kanwal gave reports dated 10/23/80 and 7/10/80, based on a physical examination, a PFS, a chest x-ray, and blood gas studies. Kanwal's diagnosis was chronic bronchitis and early pneumoconiosis.
 C. Dr. Smiddy examined Riggsby on 11/18/80, administering a chest x-ray, a PFS, and a blood gas test. The x-ray revealed possible slight pneumoconiosis. The other two tests, with the x-ray, persuaded Smiddy to diagnose pneumoconiosis severe enough to preclude coal mine work. In a 2/3/81 deposition, Smiddy reiterated his diagnosis, but said smoking may have contributed to Riggsby's condition. The ALJ found Smiddy unresponsive to deposition inquiries about the implications of negative chest x-rays and that Smiddy did not know what duties Riggsby's mine job included. Smiddy again examined and performed the same battery of tests on Riggsby on 8/18/83, and delivered the same diagnosis of pneumoconiosis, as well as of severe arteriosclerosis.
 
 
 [2]
 Unfavorable to Riggsby
 A. Dr. Dahhan examined Riggsby on 8/28/84. He conducted a blood gas test, finding varying results that "could very well be secondary to the state of [Riggsby's cardiac disease]". It is unclear whether Dahhan administered a chest x-ray himself; his diagnosis appears based on prior interpretations of earlier x-rays. He conducted no PFS, as was apparently his instruction. He found no pulmonary disability, but severe cardiac disease.
 B. Dr. Abernathy examined Riggsby on 3/12/80, and administered a chest x-ray, a PFS, and a blood gas test. He found no x-ray evidence of pneumoconiosis and diagnosed no pulmonary disease sufficient to prevent Riggsby from doing anything. In a report dated 4/4/85, and based on additional information and his earlier notes, Abernathy observed obesity and significant heart disease, but no impairment caused by coal dust.
 C. Dr. O'Neill apparently did not examine or test Riggsby, but submitted three reports from 4/11/83-3/8/85 based on others' data. The first found equivocal evidence of pneumoconiosis, but no evidence of respiratory disability. The second, 1984, report found a preponderance of the evidence against pneumoconiosis and, again, no disability. The last report affirmed the first two and attributed varying results on resting blood gas tests to age and obesity.
 
 
 [2]
 Section 727.203(b), as pertinent, provides that:
 Rebuttal of interim presumption.
 In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 * * *
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 [3]
 As for Riggsby's contention that the ALJ ought to have evaluated his case under Sec. 410.490(b), we doubt seriously whether Riggsby has preserved this argument. Riggsby did not argue the section's applicability to the ALJ or, so far as we can tell, to the Review Board, which refused to consider the section separately. Even if preserved, the argument adds little to Riggsby's case. We doubt seriously whether Riggsby could meet any Sec. 410.490(b) criterion under the Mullins Coal preponderance of the evidence standard. Broyles v. Director, OWCP, 824 F.2d 327 (4th Cir.1987), aff'd, Pittston Coal Group v. Sebben, 57 U.S.L.W. 4029 (U.S. Dec. 6, 1988) simply does not apply because Riggsby, unlike the Broyles claimants, received the benefit of a presumption of disability