SANDSTONE RESOURCES, INC., Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Columbia Gas Transmission Corporation, Intervenor.

No. 91–1206.

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 1992.

Decided Sept. 8, 1992.

Geoffrey G. Gilbert, Chicago, Ill., for petitioner.

Edward S. Geldermann, Attorney, Federal Energy Regulatory Commission ("FERC"), Washington, D.C., for respondent. William S. Scherman, Gen. Counsel, FERC, Jerome M. Feit, Sol., FERC, and Katherine Waldbauer, Attorney, FERC, Washington, D.C., were on the brief, for respondent.

John H. Pickering, Gary D. Wilson, Susan D. McAndrew, Washington, D.C., Giles D.H. Snyder, and William E. Mohler, Charleston, W.Va., were on the brief, for intervenor.

Before RUTH BADER GINSBURG, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Under the Natural Gas Policy Act of 1978, producers may not sell various categories of gas at more than the maximum prices established by the Act. Sandstone Resources, Inc., petitions for review of an order of the Federal Energy Regulatory Commission determining that costs incurred in removing liquid brine brought to the surface with natural gas are "production costs," as defined in the Commission's regulations, and therefore not separately recoverable from the purchasers of the gas. Because the agency's interpretation of its regulation is neither contrary to precedent nor clearly erroneous, we deny the petition.

## I. BACKGROUND

### A. Legal Framework

The Natural Gas Policy Act of 1978, 15 U.S.C. § 3301 *et seq.* (1988), set maximum lawful prices ("MLPs") for the first sale of various categories of natural gas. Under the Act, producers are normally prohibited from charging customers a price greater than the MLP, as that statutorily established price is intended to compensate the producer for all costs of producing the gas. Section 110 of the Act, however, allows them to recover the additional

> costs of compressing, gathering, processing, treating, liquefying, or transporting [ ] natural gas, or other similar costs, borne by the seller and allowed for, by rule or order, by the Commission.

15 U.S.C. § 3320(a)(2).

The Federal Energy Regulatory Commission ("FERC" or "Commission") has promulgated several rules and orders pursuant to section 110. In 1980, FERC issued Order No. 94, which distinguished between costs incurred to perform "production functions" and those incurred to perform "production-related functions." *See Order No. 94: Order Amending Interim Regulations Under the Natural Gas Policy Act of 1978 and Establishing Policy Under the Natural Gas Act,* FERC Statutes & Regulations (CCH) ¶ 30,178. While producers were required to absorb production costs, they were permitted, in appropriate circumstances, to recover production-related costs from their customers. *Id.* at 31,-209.

Three years later, FERC issued Order No. 94–A, which amended the regulations (codified at 18 C.F.R. § 271.1104(c)(7)) defining those terms. *See Order No. 94–A: Regulations Implementing Section 110 of the Natural Gas Policy Act of 1978 and Establishing Policy Under the Natural Gas Act,* FERC Statutes & Regulations (CCH) ¶ 30,419 ("*Order No. 94–A*"). As relevant here, the amended regulations define "production-related costs" as

> costs, other than production costs, that are incurred:

(i) To deliver, compress, treat, liquefy, or condition natural gas; or

(ii) For services, other than processing, that benefit the gas customer and are incurred to construct or operate facilities to recover, separate, extract, treat, dehydrate, store, or transport crude oil, condensate or similar liquids or liquefiable hydrocarbons removed from the natural gas stream....

18 C.F.R. § 271.1104(c)(7) (1991). Order No. 94–A contains the following description of what is entailed in "treating" and "conditioning" natural gas:

Natural gas treating ... is generally performed to remove constituents such as carbon dioxide, hydrogen sulfide and water from the gas stream because they interfere with the safe and efficient handling and transportation of the gas....

....

... Facilities such as dehydration units or liquids/gas separators may be utilized to condition the gas to the pipeline operating specifications.

Order No. 94–A at 30,364. FERC ruled that producers could recover the costs of conditioning or treating natural gas if the purchaser had expressly agreed in its contract to pay such costs. See id. at 30,353.

B. Factual and Procedural History

In June 1989, Sandstone Resources, Inc., a producer of natural gas, filed a complaint with FERC alleging that intervenor Columbia Gas Transmission Corporation had breached a contract to buy gas from Sandstone and other producers for whom Sandstone was acting as an agent. Under the terms of the contract, Columbia agreed to pay Sandstone any costs for which a producer may be reimbursed pursuant to section 110 of the Act. Gas Purchase Contract Art. 10.2 (1982), reprinted in Appendix to Brief for Intervenor at 22–23. Sandstone claimed that costs incurred in removing brine produced with natural gas, after it left the wellhead but before the gas was delivered to Columbia, were "production-related costs" and sought an order to that effect from FERC.

Sandstone argued before the Commission that whether "a particular cost is a production-related cost depends on whether the cost is incurred (1) to produce gas to the wellhead (in which case it is a production rather than a production-related cost)," or "(2) to make the gas ready for delivery after it leaves the wellhead (in which case it is a production-related cost)"; and that as "the separation of brine occurs after the gas leaves the wellhead, it is, by definition, a production-related cost." Sandstone Resources, Inc., Order Denying Request for Rehearing, 55 FERC ¶ 61,042 at 61,118 (Apr. 5, 1991) ("Order Denying Rehearing").

Sandstone also took the position that, even if the pre-versus post-wellhead distinction is not dispositive, the removal of brine "relates to the conditioning of gas flowing out of a producing well" and therefore is covered by the definition of "production-related costs" in Order No. 94–A. Affidavit of Gloria L. Massey, Sandstone Vice President (Appalachian Region) ¶ 7 (Mar. 3, 1990), reprinted in Appendix A to Brief for Petitioner at 2. Similarly, the company suggested that brine removal constitutes a form of "treatment" of natural gas under Order No. 94–A, as "the same equipment are used to separate liquid hydrocarbons, brine, and other unwanted liquids from the natural gas stream." Id. ¶ 11.

FERC rejected Sandstone's claim and denied a later petition for rehearing. See Sandstone Resources, Inc., Order Denying Complaint in Part and Dismissing Complaint in Part, 53 FERC ¶ 61,340 (Dec. 7, 1990) ("Order Denying Complaint"); Order Denying Rehearing, 55 FERC ¶ 61,042. First, FERC concluded that the company had failed to produce evidence supporting its position that the removal of brine constituted either treatment or conditioning of the natural gas: "Although Sandstone calls the removal and disposal of brine 'conditioning,' the removal and disposal of brine is not 'conditioning' as generally defined by the Commission and the industry." Order Denying Complaint, 53 FERC ¶ 61,340 at 62,240 and n. 20. The Commission also noted that while the statute and regulations "permit[ ] add-ons for

costs incurred to compress, gather, process, treat, liquefy or transport" natural gas, it was "not aware of any case and Sandstone has cited no case authorizing a producer to collect amounts under NGPA section 110 for the costs of brine separation." *Order Denying Rehearing*, 55 FERC ¶ 61,042 at 61,119.

Second, FERC rejected Sandstone's position that costs incurred in bringing the gas to the wellhead are "production costs" and those incurred thereafter are "production-related costs." *See Order Denying Complaint*, 53 FERC ¶ 61,340 at 62,240–41. In denying Sandstone's petition for rehearing, FERC reiterated that it did "not accept Sandstone's premise that whether a particular cost qualifies as a production-related cost depends exclusively on whether the cost is incurred to produce the gas to the wellhead or, conversely, to process or treat the gas after it leaves the wellhead." *Order Denying Rehearing*, 55 FERC ¶ 61,042 at 61,118. This petition for review followed.

## II. ANALYSIS

We owe great deference to an agency's interpretation of its own regulation. The Supreme Court has noted that "a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (internal quotation marks omitted). This is especially true where the agency's interpretation involves "significant expertise ... entail[ing] the exercise of judgment grounded in policy concerns." *Pauley v. BethEnergy Mines, Inc.*, — U.S. —, —, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991). Thus,

> the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). *See also Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor*, 484 U.S. 135, 159, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987) (same).

In this case, the Commission was asked to find that the cost of removing liquid brine from the well stream after it leaves the wellhead is a "production-related" cost as that term is defined in its regulation. While the definition covers, generally, "costs ... incurred ... [t]o ... treat or condition natural gas," 18 C.F.R. § 271.-1104(c)(7) (1991), it does not catalog, specifically, the activities that count as "treat[ing]" or "condition[ing]" natural gas. As mentioned earlier, Order No. 94–A offers only this guidance with respect to "treating":

> [N]atural gas treating ... is generally performed to remove constituents such as carbon dioxide, hydrogen sulfide and water from the gas stream because they interfere with the safe and efficient handling and transportation of the gas.

*Order No. 94–A*, FERC Statutes & Regulations (CCH) ¶ 30,419 at 30,364. Sandstone argues that because brine is largely water, it may be included within FERC's list of constituents whose removal constitutes treating. The Commission has pointed out, however, *see Order Denying Rehearing*, 55 FERC ¶ 61,042 at 61,119, that Sandstone has conspicuously failed to cite any case in which the costs of brine separation have been treated as reimbursable under section 110 of the Act; "[t]he sole case cited by Sandstone, *Zilka Energy Company*, 41 FERC ¶ 61,129 (1987), involved dehydration, that is, the elimination of water vapor from the gas stream." *Id.* (emphasis deleted).

Order No. 94–A makes only brief reference to "conditioning": "Facilities such as dehydration units or liquids/gas separators *may be utilized to condition* the gas to the pipeline operating specifications." FERC Statutes & Regulations ¶ 30,419 at 30,364 (emphasis added). This passage hardly means that any and all liquids requiring liquid/gas separation are necessarily liquids that, along with the gas stream, are to be categorized as "conditioned." It is not inconsistent with the regulation for FERC to refuse to read this permissive

language as requiring reimbursement of the cost of using separators to remove brine from the well stream.

We are also unimpressed by Sandstone's contention that FERC has failed to make a principled distinction between costs incurred in the removal of brine and those incurred for services "that benefit the gas customer and are incurred to ... separate ... crude oil, condensate or similar liquids or liquefiable hydrocarbons ... from the natural gas stream." 18 C.F.R. § 271.-1104(c)(7)(ii) (1991). Sandstone argues that the removal of brine "benefit[s] the gas customer" as much as the removal of liquefiable hydrocarbons and similar liquids. As the Commission has pointed out, however, "brine, which has no economic value, is in no way similar to crude oil or condensate and is not a liquefiable hydrocarbon." *Order Denying Rehearing,* 55 FERC ¶ 61,-042 at 61,118. Most important, the removal of brine does not benefit gas purchasers; rather, it "is a step which a producer must perform to deliver the product—natural gas—that the producer agreed to deliver and the buyer agreed to purchase." *Id.* The removal of liquid hydrocarbon, by contrast, merely improves the marginal quality of an already useable gas.

Perhaps recognizing the weakness of its argument that the removal of liquid brine may be equated with the removal of water vapor and liquid hydrocarbons, Sandstone focuses its challenge on the Commission's alleged failure to adhere to its own precedents. Sandstone asserts that the Commission's prior decisions make "clear that costs incurred to *treat or condition* the natural gas after it leaves the wellhead are production-related costs." Brief for Petitioner at 12 (emphasis added). While this much may be true (though, as we have observed, what counts as "treating" or "conditioning" is not so clear), Sandstone also suggests that Commission precedent requires that *any* cost incurred after the gas leaves the wellhead be treated as production related. Specifically, it maintains that the Commission "has explained the difference between the two categories of costs [production and production related]

as follows," *id.* at 9, and then proceeds to quote this passage from Order No. 94–A:

*Production costs* are those incurred in finding gas and bringing it to the wellhead. *Post-production costs* are those incurred in moving natural gas from the wellhead to a gas pipeline's mainline transportation system or in processing, treating, or conditioning the gas prior to its entering the transportation system. *Order No. 94–A,* FERC Statutes & Regulations ¶ 30,419 at 30,345 (emphasis added).

What Sandstone fails to appreciate, however, is that these two sentences distinguish "production costs" from "post-production costs," not from "production-related costs." The company also ignores the explanation, on the same page of Order No. 94–A, that post-production costs are of two kinds:

The first consists of costs that are incurred for activities that do not benefit gas customers. These costs may include, for example, costs to handle the liquid components of the gas effluent. The second type consists of all other post-production costs [i.e., those that *do* benefit gas customers], including costs for gathering, treating, conditioning, compressing or liquefying natural gas, *and are called production-related costs.*

*Id.* (emphasis added). In other words, FERC did not announce, in Order No. 94–A, a simple test in which all pre-wellhead costs are characterized as "production" and all others as "production related." Rather, it made plain that the latter must in turn be divided between those that benefit gas customers (and may therefore be charged to them) and those that do not. Because Columbia contracted to buy natural gas (which may include small quantities of liquid hydrocarbons entrained in the gas), not natural gas *and* brine, the Commission concluded that the cost of separating brine is a cost of producing the gas Sandstone has undertaken to sell.

FERC elaborates the point on appeal. It asserts that the "fundamental distinction" is that "between the 'well stream,' which contains both gases and free liquids, and the 'gas stream,' which is what remains

after the free fluids have been removed from the well stream." Brief for Respondent at 18. Although Sandstone objects that this precise distinction is not to be found in the regulations and is inconsistent with prior precedent, we believe that it is adequately explained and that it accurately reflects the substance of FERC's Order Denying Rehearing. While that Order did not use the phrase "well stream," it did speak of the "composite fluid stream" that is produced from a well and "typically consists of a gas phase and two liquid phases," one consisting of "liquid hydrocarbons (e.g., crude oil, condensate, etc.)" and the other " 'free' water (e.g., brine)." *Order Denying Rehearing,* 55 FERC ¶ 61,042 at 61,118 n. 1. It noted that the "removal of the liquid water phase is a step which a producer must perform to deliver the product—natural gas—that the producer agreed to deliver and the buyer agreed to purchase." *Id.*

Sandstone's arguments over what are essentially rules of thumb avoid the more fundamental question; and that is, whether the Commission erred when it found that the brine separation did not constitute "treating" or "conditioning" under its regulations. *See Order Denying Rehearing,* 55 FERC ¶ 61.042 at 61,119. In making that finding, FERC explained that

> costs incurred to remove and dispose of brine, a waste by-product produced with but not entrained in the gas, are "production costs" because it must be removed to make the gas ... "useful" to the purchaser. As Columbia notes, its contracts obligate it to purchase gas, not brine.

*Order Denying Complaint,* 53 FERC ¶ 61,340 at 62,240. The Commission also noted:

> In some instances, wells load up with brine ... and the producer must install small diameter tubing in the wellbore to remove the brine ... to restore production. Clearly, the costs of such equipment to remove the brine are "production costs" because without the equipment the well would not produce any gas. The Commission believes that simply because brine is brought to the surface as a result of the natural pressure of a reservoir does not change the removal of brine into a "production-related cost" as Sandstone argues. The costs incurred to remove and dispose of brine which occurs downhole and brine which is produced to the surface by natural means should be treated the same.

*Id.* at 62,240–41.

We have no reason to quarrel with these explanations, especially as Sandstone has cited not a single case, nor produced a jot of evidence regarding industry practice, that supports the conclusion that the removal of brine must be viewed as the treating or conditioning of natural gas.

### III. CONCLUSION

We noted at the outset that a court owes special deference to an agency's interpretation of its own regulations. Because the Commission's explanation of its finding is reasoned and because Sandstone has failed to show that the removal of brine entails the "treating" or "conditioning" of natural gas, we cannot find the Commission's finding "plainly erroneous or inconsistent with the regulation." *Bowles,* 325 U.S. at 414, 65 S.Ct. at 1217. Accordingly, the petition for review is

*Denied.*