**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BETHENERGY MINES, INCORPORATED,
                              *Petitioner,*

v.

JAMES HENDERSON; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
                              *Respondents.*

No. 99-2495

On Petition for Review of an Order of the
Benefits Review Board.
(98-1357-BLA, 92-449-BLA)

Argued: November 3, 2000

Decided: February 16, 2001

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

---

Reversed and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** William Steele Mattingly, JACKSON & KELLY,
P.L.L.C., Morgantown, West Virginia, for Petitioner. Barry H.
Joyner, Office of the Solicitor, UNITED STATES DEPARTMENT
OF LABOR, Washington, D.C., for Respondent Director; Ray
Edmond Ratliff, Jr., Charleston, West Virginia, for Respondent Hen-

derson. **ON BRIEF:** Henry L. Solano, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Respondent James Henderson was awarded black lung benefits by an ALJ in 1987. Petitioner BethEnergy Mines, Inc., Henderson's employer, sought modification of the award, contending that the ALJ had made "a mistake in a determination of fact" in initially awarding benefits to Henderson. Upon reconsideration, the ALJ found, based on new evidence proffered by BethEnergy, that it had been mistaken in a determination of fact. Nevertheless, the ALJ denied reopening because it held that reopening would not "render justice under the Act." The Benefits Review Board affirmed. For the reasons that follow, we reverse and remand.

### I.

As with many cases involving black lung benefits, James Henderson's claim has a complicated and protracted history. Henderson worked as a coal miner for 45 years, primarily as a motorman and general laborer. J.A. 45, 52, 61, 72. Over time, Henderson developed breathing difficulties, and he filed an application for black lung benefits on February 1, 1980.[1] J.A. 15. His claim was initially denied by

---

[1]Because Henderson's application was originally filed between the dates of June 30, 1973, and April 1, 1980, the disposition of his claim is governed by the "interim regulations" promulgated by the Secretary of Labor. *See* 20 C.F.R. pt. 727; *Mullins Coal Co.* v. *Director, OWCP*, 484 U.S. 135, 137 (1987). The "interim regulations" created the interim presumption at issue in this case.

the Department of Labor, prompting him to request a hearing before an ALJ. J.A. 22. More than seven years after Henderson filed his application, the ALJ awarded benefits, holding that Henderson had invoked, and BethEnergy Mines, Inc. ("BethEnergy")[2] had failed to rebut, the interim presumption codified at 20 C.F.R. § 727.203. J.A. 15-17.

The federal black lung statute provides disability benefits to a miner if: (1) he or she is totally disabled; (2) the disability was caused, at least in part, by pneumoconiosis; and (3) the disability arose out of coal mine employment. *See Mullins Coal Co.* v. *Director, OWCP*, 484 U.S. 135, 141 (1987). Each of the elements for eligibility is presumed under section 727.203(a) if a miner has been engaged in at least ten years of coal mine employment and meets one of five regulatory requirements, which are aimed at determining whether a claimant has pneumoconiosis. *See* 20 C.F.R. § 727.203(a). The types of medical evidence that can be used to satisfy the requirements for invocation of the interim presumption include, *inter alia*, x-rays, blood gas and pulmonary studies, and documented medical opinions. *See* 20 C.F.R. § 727.203(a)(1)-(4).

At the time of the hearing before the ALJ, the prevailing law in this circuit was that even "credible evidence [of] a [single] qualifying X-ray indicat[ing] the presence of pneumoconiosis" was sufficient to invoke the interim presumption. *Stapleton* v. *Westmoreland Coal Co.*, 785 F.2d 424, 426 (4th Cir. 1986) (en banc), *rev'd*, 484 U.S. 135 (1987). The record in Henderson's case contained two positive x-ray readings. Consequently, BethEnergy conceded that Henderson had met the *Stapleton* test, but sought to rebut the presumption, despite the two positive x-rays, by establishing that Henderson was able to do his "usual coal mine work or comparable and gainful work" or that his total disability "did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(2), (3).

In awarding benefits to Henderson, the ALJ found that Henderson had invoked the interim presumption because "[t]he x-ray evidence establishes and the Employer concedes that Claimant has pneumoco-

---

[2]During the pendency of Henderson's claim, Bethlehem Mines, Inc., has reorganized and is now known as BethEnergy Mines, Inc.

niosis." J.A. 15. The ALJ also concluded that BethEnergy failed to rebut the interim presumption. J.A. 15-17.

The BRB affirmed the award of benefits to Henderson, and BethEnergy filed a motion for reconsideration, which the BRB, sitting en banc, denied. J.A. 19-20. We affirmed the BRB's decision by published opinion. *See Bethlehem Mines Corp.* v. *Henderson*, 939 F.2d 143 (4th Cir. 1991). Approximately two months following our decision in *Bethlehem Mines*, BethEnergy filed a timely petition for modification pursuant to 20 C.F.R. § 725.310(a). J.A. 37-39. That section provides:

> Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.[3]

BethEnergy petitioned for modification on the ground that the ALJ was mistaken when it concluded that Henderson had invoked the interim presumption with qualifying x-ray evidence. Its petition was primarily based upon two events occurring after the ALJ awarded benefits to Henderson: (1) Dr. Zaldivar recanted a prior positive x-ray reading, which was a basis for the ALJ's original award of benefits, stating that the poor quality of the x-ray had caused him to mistakenly conclude that it showed pneumoconiosis, J.A. 43, 121; and (2) the Supreme Court rejected *Stapleton*'s rule that the interim presumption could be invoked with one qualifying item, adopting instead a requirement that the claimant prove an "invocation fact by a preponderance of the evidence," *Mullins*, 484 U.S. at 154, 161 n.35.

BethEnergy not only relied on Zaldivar's recantation in demonstrating that Henderson was no longer entitled to the interim presumption under *Mullins*, but it also presented additional x-ray evidence showing that Henderson did not have pneumoconiosis. By the time of

---

[3]Although the modification regulation refers only to a "deputy commissioner," we have previously held that the term also includes "an ALJ to whom a modification request has been referred." *Jessee* v. *Director, OWCP*, 5 F.3d 723, 725 n.2 (4th Cir. 1993).

the modification hearing before the ALJ, BethEnergy had obtained 41 negative x-ray readings versus the sole positive x-ray reading by Dr. Bassali.[4] J.A. 171-72.

Despite these developments, the ALJ did not conclude that there had been a "mistake in a determination of fact" until after the BRB had remanded the case twice. J.A. 193-94. Then, though the ALJ found "that the preponderance of the evidence does not establish the existence of pneumoconiosis," the ALJ still refused to reopen the record on the ground that doing so would not "render justice under the Act." J.A. 189. First, the ALJ noted that BethEnergy had conceded the existence of pneumoconiosis under section 727.203(a)(1), and had failed to challenge invocation of the interim presumption based upon *Mullins* or any other ground before the BRB or this court. Second, the ALJ found that BethEnergy "sat on its heels" by failing to develop its own medical evidence prior to the first hearing. J.A. 188. Therefore, the ALJ denied modification, deciding it was improper to allow BethEnergy either to relitigate its claim through the back door "after it failed on a previous theory" or to correct counsel's misjudgments belatedly. J.A. 189. The BRB affirmed, relying on the reasoning of the ALJ. J.A. 199. BethEnergy filed a timely petition for review in this court. J.A. 200-203.

## II.

The modification of an award or denial of benefits under the Black Lung Benefits Act can be based upon either a "mistake in a determination of fact" or a "change in conditions." *See* 20 C.F.R. § 725.310.[5] We must reverse an ALJ's decision on a modification request if the ALJ abused its discretion. *See O'Loughlin* v. *Parker*, 163 F.2d 1011, 1012 (4th Cir. 1947); *see also Betty B Coal Co.* v. *Director, OWCP*, 194 F.3d 491, 501 (4th Cir. 1999) (noting that "we would not hesitate

---

[4]BethEnergy informed the court at argument that the x-ray read by Bassali has been destroyed and, as a result, no further readings of that x-ray are possible.

[5]The modification procedures for black lung cases are expressly incorporated from the Longshore and Harbor Workers' Compensation Act. *See* 30 U.S.C. § 932(a) (incorporating 33 U.S.C. § 922); *Consolidation Coal Co.* v. *Borda*, 171 F.3d 175, 180 (4th Cir. 1999).

to correct abuses" of an ALJ's discretion to grant or deny reopening). Under the abuse of discretion standard, reversal is warranted when we have "a definite and firm conviction" that the tribunal below "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *See Westberry* v. *Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (internal quotations omitted).

Although the ALJ was permitted to consider whether reopening would "render justice under the Act," we conclude that the ALJ nevertheless abused its discretion by misapplying that standard to the case at hand.[6] The ALJ did not deny reopening because of a conclusion that there was no mistake of fact or change in conditions. Nor did the ALJ find that BethEnergy had engaged in misconduct — such as improperly withholding evidence or filing multiple modification requests in order to harass a claimant — which would have raised equitable concerns counseling against a reopening of the proceedings. Rather, the ALJ denied rehearing essentially in the interest of finality, to prevent BethEnergy from getting "another bite at the apple."

We have, however, expressly disavowed the importance of finality in such circumstances, concluding instead that "to the extent the 'principle of finality' ever applies to black lung claims,'" it does not apply to properly filed modification requests. *Jessee*, 5 F.3d at 725; *see also Borda*, 171 F.3d at 180 (stating that the modification provision in black lung cases is "inherently broad" and has been interpreted "expansively," and that the principle of finality does not apply in black lung claims as it does in ordinary lawsuits). Similarly has the Supreme Court rejected the application of res judicata to modification requests. *See Jessee* v. *Director, OWCP*, 5 F.3d 723, 725 (4th Cir.

---

[6]Contrary to BethEnergy's assertion, we cannot say that the ALJ applied an incorrect legal standard when it considered whether reopening the award of benefits to Henderson would "render justice under the Act." The Supreme Court has declared that an ALJ's exercise of discretion in modification cases may be guided by that principle. *See O'Keeffe* v. *Aerojet-General Shipyards, Inc.*, 404 U.S. 254, 256 (1971) (per curiam) (stating that an ALJ should "review factual errors in an effort 'to render justice under the Act'"); *see also Betty B Coal*, 194 F.3d at 497-98 ("[T]he modification procedure is flexible, potent, easily invoked, and intended to secure 'justice under the Act.'").

1993) (citing *Banks* v. *Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 461-65 (1968)). Finality and res judicata simply are not appropriate factors in adjudicating modification requests because an ALJ may simply reverse a decision, with or without a request for modification, even when there is no new evidence or solely new evidence to consider. *See O'Keeffe*, 404 U.S. at 255; *Jessee*, 5 F.3d at 725. In modification cases, the paramount interest is in ensuring that eligible claimants receive benefits and that ineligible claimants do not, and when that interest clashes with an interest in finality, the latter must yield.

The BRB stated in a related case that "[o]ne could hardly find a better reason for rendering justice than that it would be unjust or unfair to require an employer to pay benefits to a miner who does not meet the requirements of the Act." *L.C. Branham*, 21 Black Lung Rep. 1-79, 1-83 (Ben. Rev. Bd. March 19, 1998); *see also* 30 U.S.C. § 901(a) ("[T]he purpose of this subchapter [is] to provide benefits, in cooperation with the States, to coal miners *who are totally disabled due to pneumoconiosis . . . .*") (emphasis added). Because here, too, due to a lack of evidence of pneumoconiosis, it may well be unfair or unjust to require the employer to pay benefits, the ALJ in its discretion should have granted the petition to reopen.

### III.

The only remaining question is whether we should remand this case to the BRB for further proceedings or decide Henderson's eligibility for benefits today. The Director urges a remand because the ALJ placed the burden of persuasion on Henderson to prove that he was eligible for the interim presumption, rather than requiring BethEnergy to disprove that fact. *See Metropolitan Stevedore Co.* v. *Rambo*, 521 U.S. 121, 139 (1997) (stating that the burden of persuasion for a modification request is on the proponent of such request). BethEnergy does not dispute that *Metropolitan Stevedore* controls or that the burden of persuasion was placed on the wrong party; rather, it contends that remand would be a "waste of time." We find it unnecessary to remand on the question of whether a mistake in fact has occurred based on the x-ray evidence. There are now 41 negative x-ray readings in the record, 25 of which are interpretations of x-rays that were taken after the sole positive x-ray reading by Bassali. J.A.

172. And the x-ray read by Bassali — the only x-ray which could support invocation of the interim presumption — has been destroyed. No reasonable ALJ could conclude that Henderson is eligible for the interim presumption under section 727.203(a)(1) based on the x-ray evidence, regardless of which party has the burden of establishing a "mistake in a determination of fact." We do believe, however, that remand is appropriate to determine whether Henderson can invoke the interim presumption through other qualified medical evidence. Due to its denial of reopening, the ALJ has yet to have the opportunity to independently consider whether Henderson could invoke the interim presumption through blood gas or pulmonary studies or other qualified medical evidence.

The decision of the Board is reversed and the case is remanded with instructions to reopen proceedings.

*REVERSED AND REMANDED WITH INSTRUCTIONS*